In the Matter of the Claim of the STATE INDUSTRIAL COMMISSION, Respondent, against MARY NEWMAN et al., Appellants.

**Workmen's Compensation Law — constitutionality of provision requiring the insurance carrier, in cases of death where no one entitled to an award survives the deceased, to pay one hundred dollars to the state treasurer.**

The provision of the Workmen's Compensation Law (Cons. Laws, ch. 67, § 15, subd. 7; L. 1916, ch. 622), requiring the insurance carrier to pay to the state treasurer the sum of one hundred dollars for every case of injury causing death in which there is no person surviving the deceased who is entitled to compensation under the law, is a valid enactment within the letter and spirit of the State Constitution (Art. 1, § 19).

*Matter of State Industrial Comm.* v. *Newman,* 179 App. Div. 481, affirmed.

(Argued January 9, 1918; decided January 29, 1918.)

Appeal, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered July 18, 1917, unanimously affirming an award of the state industrial commission under the Workmen's Compensation Law.

The facts, so far as material, are stated in the opinion.

*Edward P. Mowton* for appellants. That part of subdivision 7 of section. 15 of chapter 816 of the Laws of 1913, as re-enacted by chapter 41 of the Laws of 1914, and amended by chapter 316 of the Laws of 1914, constituting chapter 67 of the Consolidated Laws, further amended by chapters 167, 168, 617 and 674 of the Laws of 1915 and by chapter 622 of the Laws of 1916, which in every case of injury causing death in which there are no persons entitled to compensation, provided for the payment of the sum of $100 to the state treasurer, by the insurance carrier, is unconstitutional. . (*Ives* v. *S. B. R. Co.*, 201 N. Y. 271.)

*Merton E. Lewis*, Attorney-General (*E. C. Aiken* of counsel), for respondent. Subdivision 7 of section 15 of the Workmen's Compensation Law is constitutional. (*N. Y. C. R. R. Co.* v. *White*, 243 U. S. 189; *M. T. Co.* v. *State*, 243 U. S. 219; *Shanahan* v. *M. E. Co.*, 219 N. Y. 469; *Schwab* v. *E. F. Co.*, 216 N. Y. 712.)

Collin, J. The state industrial commission decided that Julia De Hart, an employee of the appellants, died from injuries received under conditions making the Workmen's Compensation Law applicable, and left surviving her no person entitled under the law to compensation. (See Workmen's Compensation Law [Cons. Laws, ch. 67], § 16.) They, therefore, pursuant to the provisions of section 15, subdivision 7, of the law, awarded to the state treasurer the sum of one hundred dollars. The appeal here is from the order of the Appel-

late Division affirming the award. The subdivision provides: " If an employee who has previously incurred permanent partial disability through the loss of one hand, one arm, one foot, one leg, or one eye, incurs permanent total disability through the loss of another member or organ, he shall be paid, in addition to the compensation for permanent partial disability provided in this section and after the cessation of the payments for the prescribed period of weeks special additional compensation for the remainder of his life to the amount of sixty-six and two-thirds per centum of the average weekly wage earned by him at the time the total permanent disability was incurred. Such additional compensation shall be paid out of a special fund created for such purpose in the following manner: The insurance carrier shall pay to the state treasurer for every case of injury causing death in which there are no persons entitled to compensation the sum of one hundred dollars. The state treasurer shall be the custodian of this special fund, and the commission shall direct the distribution thereof." (Section 15, subd. 7, added by L. 1916, ch. 622.)

The appellants assert that the provision requiring the payment to the state treasurer is not authorized by the Constitution of the state, in that it requires the insurance carrier to pay compensation to another than employees of the employer insured by it. Their statement in effect is: The Constitution authorizes statutory compensation, under the prescribed condition, from an employer to *his* employee or to the dependents of the employee in case the injuries cause his death; within the intendment of the Constitution, the legislature was so restricted in enacting the law as to be unable to obligate an employer to others than his employees or their dependents, or to establish a pension fund for employees generally. The constitutional provision, so far as relevant here, is: " Nothing contained in this Constitution shall be con-

strued to limit the power of the legislature to enact laws * * * for the payment, either by employers, or by employers and employees or otherwise, either directly or through a state or other system of insurance or otherwise, of compensation for injuries to employees or for death of employees resulting from such injuries without regard to fault as a cause thereof, except * * *; provided that all moneys paid by an employer to his employees or their legal representatives, by reason of the enactment of any of the laws herein authorized, shall be held to be a proper charge in the cost of operating the business of the employer." (State Const. article 1, § 19.)

An historical statement will indicate the approach to a correct determination of the question presented. In 1910, a legislative act entitled "An act to amend the labor law, in relation to workmen's compensation in certain dangerous employments" became a law. It was the forerunner of and in general purpose and character similar to the existing Workmen's Compensation Law. (Laws of 1910, ch. 674.) In March, 1911, we adjudged it invalid because it infracted certain provisions of the State Constitution which then did not contain the section (§ 19 of article 1) we have referred to and in part quoted. That section was duly adopted on November 4, 1913, and, of course, became effective January 1, 1914. In March, 1914, the present Workmen's Compensation Law was finally enacted. (Laws of 1914, ch. 41.) It did not then contain the provisions, here involved, of subdivision 7 of section 15. In November, 1915, we decided that a claimant, who became an employee under the act, having theretofore lost a hand, became entitled, upon the loss of the remaining hand while such employee, to the compensation for permanent total disability and not to the lesser compensation for permanent partial disability. (*Matter of Claim of Schwab* v. *Emporium F.*

*Co.*, 216 N. Y. 712.)   Our decision related to a claim arising in July, 1914, and affirmed the decision of the Appellate Division rendered May 5, 1915.   (*Matter of Claim of Schwab* v. *Emporium F. Co.*, 167 App. Div. 614.) Manifestly, the law was a hindrance to those who, having lost a hand or other member, sought to become employees under the act, because the loss of the remaining member subjected the employer to the payment of a compensation substantially greater than it would in case the employee had had the two members.   After the decision of the Appellate Division, the legislature by an amendment to subdivision 6 of section 15 enacted that " an employee who is suffering from a previous disability shall not receive compensation for a later injury in excess of the compensation allowed for such injury when considered by itself and not in conjunction with the previous disability."   (Laws of 1915, ch. 615.)   The provisions of section 15 were supplemented in 1916 by the addition of subdivision 7 which we have already quoted.   The evident and clear purpose of the subdivision was to remove a condition, as between employers and partially disabled employees, inconsonant with the spirit of the act and, perhaps, unjust, through the creation of a state fund contributed to by the insurance carriers and, as the permanent total disability arose, accessible to any member of the entire prescribed class of employees so disabled.   Its provisions are within the letter and spirit of the Constitution.

The act requires each employer within its provisions to secure the prescribed compensation to his employees in one of the following ways:   (1) By insuring and keeping insured the payment of such compensation through the state fund; or (2) through any stock corporation or mutual association authorized to transact the business of workmen's compensation insurance in the state; or (3) securing from the state industrial

commission in the stated manner permission to be a self-insurer. (§ 50.) The term "insurance carrier" of subdivision 7 of section 15 includes the state fund, the stock corporations or mutual associations and the self-insurer. (§ 3, subd. 12.) All employers, therefore, contribute under identical conditions to the special fund of said subdivision 7, those utilizing the state fund or the stock or mutual associations through the insurance premiums contributed to the fund or association and the self-insurers by payments directly. The special fund is exclusively distributed among the employees of those who contribute. Its creation and use are not different in principle from those of the state fund or the funds of the associations constituted of the premiums received. In the last analysis all compensation to the employees of the employers paying those premiums is not paid by the employer to *his* employees, but from the aggregated and indiscriminate funds. From those funds the awarded compensation is directly paid to the employees or dependents, or reimbursement for payments by employers is made to them. (§§ 53, 54, 25, 26.) In *Matter of Jensen* v. *Southern Pacific Co.* (215 N. Y. 514) we expressed the conclusions that the scheme of the act is essentially and fundamentally the creation of a state fund from premiums paid by employers to insure or effect the payment of a prescribed compensation for disability or death from accidental injuries sustained by employees engaged in certain enumerated hazardous employments, and that the act was amply sustained by the Constitution. Subdivision 7 is well within the scheme.

The industrial commission awarded against the employers and the insurance carrier to Edward W. Wainwright the sum of one hundred dollars on account of the funeral expenses of the deceased employee. The act provides (§ 16): "If the injury causes death, the compensation

shall be known as a death benefit and shall be payable in the amount and to or for the benefit of the persons following: 1. Reasonable funeral expenses, not exceeding one hundred dollars;" (then follow subdivisions 2, 3 and 4 enumerating the persons who may be entitled to and apportioning the compensation). The act also provided: "'Compensation' means the money allowance payable to an employee or to his dependents as provided for in this chapter, and includes funeral benefits provided therein." (§ 3, subd. 6.) The record, therefore, presents the question whether or not Wainwright, the undertaker, was a person entitled to compensation within and making inapplicable here the provisions of subdivision 7 of section 15 relating to the special fund. The expressed legislative intention must dictate our determination. The legislation, in connection with the judicial decisions, indicates that the attention and consideration of the legislature was specially given to the conditions which induced the enactment of subdivision 7. Manifestly, the subdivision was intended to bring to the designated employees the additional compensation for total permanent disability, without making the payment of the compensation a ground for refusing employment to them. The legislative intention could be effected through the creation of a state fund. The insurance carriers receive premiums based, in part, upon the inclusion as employees of those receiving injuries causing death and leaving no dependents entitled to compensation. They, receiving the premiums, and being free from liability to dependents, could contribute to the fund paying the additional compensation without harm to the employers. The legislature intended to create the fund. Through ordinary and common knowledge and experience, we know that the intention would be foiled in case the act, in fact, constituted the undertaker, who is awarded reasonable funeral expenses, a person entitled to compensation on

24

account of the death of the employee. The act as originally enacted contained section 3, subdivision 6 and the part of section 16 we have quoted and the legislature in enacting in 1916 subdivision 7 did not heed the apparent inharmony between it and those parts. Indeed, in the original act, instances of like inharmony existed; for example, the provision that the " compensation under the provisions of this chapter shall be payable periodically, in accordance with the method of payment of the wages of the employee at the time of his injury or death, and shall be so provided for in any award " (§ 25) is inapplicable to funeral expenses. The legislature intended in enacting subdivision 7 that the insurance carrier shall pay to the state treasurer for every case of injury causing death in which there is no person of those enumerated in subdivisions 2, 3 and 4 of section 16 surviving the deceased the sum of one hundred dollars. The legislative intention, if expressed, is the law itself. (*Matter of Meyer*, 209 N. Y. 386.)

The order should be affirmed, with costs.

HISCOCK, Ch. J., CUDDEBACK, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Order affirmed.