[Civ. No. 61638. Second Dist., Div. Three. Dec. 17, 1982.]

TRAVELERS INSURANCE COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
DEPARTMENT OF INDUSTRIAL RELATIONS et al., Respondents.

Jones, Nelson, Sisk & Ford and Peter L. Dragolovich for Petitioner.

George Deukmejian, Attorney General, and Geoffrey M. Huntting, Deputy Attorney General, for Respondents.

OPINION

**COBEY, Acting P. J.**\*—At issue herein is the amount of death benefits for which the employer's workers' compensation insurance carrier is liable where the deceased worker leaves surviving him only partial dependents. Under compulsion of *Department of Industrial Relations* v. *Workers' Comp. Appeals Bd. (Tessler)* (1979) 94 Cal.App.3d 72 [156 Cal.Rptr. 183], (disapproved in *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.* (1982) 31 Cal.3d 715, 727 [182 Cal.Rptr. 778, 644 P.2d 1257]), the respondent Workers' Compensation Appeals Board (WCAB) has held that the respondent Department of Industrial Relations (of the State of California), Division of Industrial Relations, Non-Dependent Death Unit (hereinafter Department) is entitled to the balance of the maximum $50,000 death benefits for the injury herein where the surviving partial dependents were not awarded the full $50,000. Petitioner not only attacks the foregoing ruling by the WCAB regarding Department's right to part of the death benefit but also challenges the amount of the death benefit awarded to the deceased employee's partial dependents. For reasons more fully stated below, we will annul the WCAB's decision since we hold that where there are partial dependents Department is not entitled to any portion of the death benefit and the amount of the death benefit payable to the partial dependents must be redetermined by the WCAB.

---

\*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

I

Herein, it is undisputed that Sam Lee sustained injury on September 19, 1978, arising out of and occurring in the course of his employment and that said injury resulted in his death. Petitioner, Travelers Insurance Company (Travelers), is the workers' compensation carrier for Lee's employer.

At the time of his injury, decedent did not leave anyone totally dependent upon him for support; he did, however, have his mother, father, and two sisters partially dependent upon him for support. (Lab. Code, §§ 3501, 3502, 3503.)

At the time of decedent's injury the total aggregate death benefit for persons totally dependent on the decedent was $50,000; except where there was a surviving spouse with a minor child in which case the death benefit was $55,000. The *total* dependents receive the entire $50,000 or $55,000 as the case may be. (Lab. Code, § 4702.) Where there are total dependent(s) they receive the entire death benefit to the exclusion of the partial dependent(s) who receive nothing. (Lab. Code, § 4703.) Thus, only where, as here, the decedent's only dependent(s) are partial dependent(s) do the partial dependent(s) receive death benefits. (*Ibid.*)

At the time of decedent's injury "In cases of partial dependency the death benefit [is calculated to] be a sum equal to four times the amount annually devoted to the support of the dependents by the [deceased] employee, not to exceed the sum of fifty thousand dollars ($50,000)." (Lab. Code, § 4702.)

Department's claim to part of the death benefits is based upon the provisions of Labor Code section 4706.5, subdivision (a), which at the time of injury read: "Whenever any fatal injury is suffered by an employee under such circumstances as to entitle him to compensation benefits, but for his death, *and such employee does not leave surviving him any person entitled to a dependency death benefit, the employer shall pay a sum to the Department of Industrial Relations equal to the total dependency death benefit that would be payable to a surviving spouse with no dependent minor children.*" (Italics supplied.)

Department acknowledges that under this provision it receives no portion of the death benefit where the deceased employee leaves one or more *total* dependents.

In *Department of Industrial Relations* v. *Workers' Comp. Appeals Bd. (Tessler), supra,* 94 Cal.App.3d 72, the Court of Appeal, First Appellate District, Division One, interpreted Labor Code section 4706.5, subdivision (a), to mean that, where there are only partial dependents and the total maximum death benefit (here $50,000) is not completely paid to the partial dependents, the balance of the benefit is payable to the Department.

Relying upon *Tessler,* Department and the partial dependents have reached a stipulation as to the distribution of the maximum $50,000 death benefit. Under said agreement Department receives $25,000 and the partial dependents $25,000. Travelers was not a party to said stipulation, as under *Tessler,* it is mere stakeholder. The workers' compensation judge ordered distribution of the death benefit as agreed by Department and the partial dependents. Travelers' petition for reconsideration was denied by the WCAB.

Before this court, Travelers contends that (1) the partial dependents are not entitled to $25,000 because the amount that decedent annually contributed to their support, when multiplied by four, is insufficient to establish such a partial dependency death benefit and (2) the award of death benefits to Department is in error as the Department is only entitled to death benefits when there are neither *total* nor *partial* dependents. Thus, Travelers requests that we disagree with the decision of another division of this court.[1] We intend to do so.

II

At the outset of our analysis, we observe that the *Tessler* court failed to indicate whether the result it reached was consistent with article XIV, section 4, of the Constitution.

Escheat to the State of California of workers' compensation death benefits required a specific amendment of article XX, section 21, of the Constitution (now art. XIV, § 4), the constitutional provision authorizing the workers' compensation act. (See *Commercial Cas. Ins. Co.* v. *Industrial Acc. Com.* (1930) 211 Cal. 210, 215 [295 P. 11]; *Yosemite L. Co.* v. *Industrial Acc. Com.* (1922) 187 Cal. 774, 783 [204 P. 226, 20 A.L.R. 994]; *People* v. *Standard Oil Co.* (1933) 132 Cal.App. 563, 566-567 [23 P.2d 86].)

In the General Election of November 7, 1972, the people approved Proposition 13, to amend then article XX, section 21, by adding the following: "The Legislature shall have power to provide for the payment of an award to the state in the case of the death, arising out of and in the course of the employment, of an employee without dependents, and such awards may be used for the payment of extra compensation for subsequent injuries beyond the liability of a single employer for awards to his employees."[2]

---

[1] In *State of California* v. *Workers' Comp. Appeals Bd. (Butterworth)* (1980) 101 Cal.App.3d 673, 678, footnote 1 [161 Cal.Rptr. 821], the First Appellate District, Division Three implicitly followed *Tessler*.

[2] Present article XIV, section 4, of the Constitution has the identical provision except that the end of this provision now reads "to employees of the employer" instead of "to his employees." This difference is of no import.

Obviously, Labor Code section 4706.5, the statute implementing this constitutional amendment (which was originally added by Stat. 1972, ch. 1334, § 3, p. 2666) is limited by and must be interpreted consistently with its authorization.

■ This amendment must receive a liberal and practical common sense construction. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281]; *Los Angeles Met. Transit Authority* v. *Public Util. Com.* (1963) 59 Cal.2d 863, 869 [31 Cal.Rptr. 463, 382 P.2d 583].) Further, it should be construed in accordance with the natural and ordinary meaning of its words. (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at p. 245; *In re Quinn* (1973) 35 Cal.App.3d 473, 482 [110 Cal.Rptr. 881].) Most importantly, any apparent ambiguities frequently may be resolved by the contemporaneous construction of the Legislature or the administrative agencies charged with implementing the new enactment. (*Amador Valley Joint Union High Sch. Dist., supra,* 22 Cal.3d at p. 245; see also *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 668 [150 Cal.Rptr. 250, 586 P.2d 564]; *Messina* v. *Workers' Comp. Appeals Bd.* (1980) 105 Cal.App.3d 964, 967-968, fn. 3 [164 Cal.Rptr. 762].) Finally, an analysis of the voters pamphlet may shed light upon the intent of the voters. (*Amador Valley Joint Union High Sch. Dist., supra,* 22 Cal.3d at pp. 245-246; *White* v. *Davis* (1975) 13 Cal.3d 757, 775. fn. 11 [120 Cal.Rptr. 94, 533 P.2d 222]; *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 821 [164 Cal.Rptr. 739]; *In re Quinn, supra,* 35 Cal.App.3d at p. 483.)

The official title and summary in the voters pamphlet states: "WORKMEN's COMPENSATION. Legislative Constitutional Amendment. Gives Legislature power to provide for payment of workmen's compensation award to state on death, arising out of and in course of employment, of employee *without dependents*. Permits such awards to be used for extra subsequent injury compensation. Financial impact: If implemented, would decrease state costs approximately $1,800,000 per year." (Italics supplied.)

The "General Analysis by the Legislative Counsel" states: "A 'Yes' vote on this legislative constitutional amendment is a vote to grant the Legislature the power to provide for the payment to the state of workmen's compensation awards on the death of employees injured in the course of their employment *who have no dependents,* and to permit such awards to be used to pay extra compensation for 'subsequent injuries,' which is now paid from the General Fund." (Italics supplied.)

The "Detailed Analysis by the Legislative Counsel" states: "The Constitution now authorizes the Legislature to enact a complete system of workmen's

compensation. Generally, under the present system, an employee is compensated for an industrially-caused injury. An award is made to his surviving dependents in case of death resulting from such injuries; but *no award is payable if he has no surviving dependents.*

"As a part of this present system, General Fund money is appropriated to pay additional workmen's compensation for 'subsequent injuries,' that is, payments to an employee with a pre-existing partial permanent disability who thereafter sustains an industrially-caused partial permanent disability. The additional payment is for that portion of the combined disability in excess of the percentage attributable to the later injury for which the employer is liable.

"However, the Constitution does not permit the Legislature to require that funds of one employer be used to pay compensation to employees of another employer.

"This measure would permit the Legislature to require that on the industrially-caused death of *an employee who leaves no surviving dependents,* the employer shall pay a death benefit to the state to be used for payments of additional compensation to workmen, including those not employed by such employer, for 'subsequent injuries.'" (Italics supplied.)

Similarly the "Cost Analysis by the Legislative Analyst" states: "Present California state law provides that an emloyee who is disabled by an injury arising 'out of and in the course of' his employment is entitled to workmen's compensation benefits, including medical treatment, temporary disability payments, permanent disability compensation and a death benefit if the workman dies leaving dependent survivors. The amount of the weekly temporary and permanent disability benefit payments is based upon the severity of the disability. Where the injury causes death, the employer is liable for reasonable burial expenses not exceeding $1,000 and a death benefit of $25,000 for one dependent or $28,000 for a surviving widow and one or more dependent minor children, payable in installments.

". . . . . . . . . . . . . . . . . . . . . . . .

"This constitutional amendment would permit the Legislature to require that when an employee dies as the result of an industrial injury and *leaves no dependent heirs,* the death benefit of $25,000 which otherwise would have been paid to a surviving dependent shall be paid to the state instead. Such payments would be used by the state to finance the workmen's compensation disability payments under the Subsequent Injuries program, and thereby eliminate or reduce the cost of this program to the General Fund.

"The annual number of job-related deaths in California over the past six years has remained fairly constant at about 725. Approximately 10 percent of these persons leave no dependents. Thus, based on an estimated 72 non-dependency deaths per year, we estimate that this amendment would permit the state to realize saving of at least $1.8 million annually." (Italics supplied.)

The only argument in the voters pamphlet regarding this ballot proposition was an argument in its favor by State Senator Donald L. Grunsky and Assemblyman Frank Murphy, Jr. This argument states: "Proposition 13 amends our State Constitution to allow payment of Workmen's Compensation accidental death benefits to a state fund *when the deceased employee has no dependents.*

"Under existing law the death benefits from Workmen's Compensation award, *which normally are paid to legal heirs, are paid to no one if legal heirs cannot be found.* A YES vote on Proposition 13 *would allow the Legislature to enact laws which would require that such benefits be paid to a state fund when no legal heirs can be found.* Twenty-six states now have similar state funds financed in this manner.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Proposition 13 is a noncontroversial measure supported by both houses of the Legislature and is a completely nonpartisan measure as evidenced by the fact that there were no dissenting votes cast in either house." (Italics supplied.)

■   We observe that nowhere in connection with the passage of the amendment were the voters advised of the possibility of payments to partial dependents. Since the original enactment of the Workmen's Compensation Act of 1917, provision has been made for death benefits for partial dependents, which when computed may be less than those for total dependents. (Stats. 1917, ch. 586, §§ 9, 14, pp. 839-840, 844-845.) At the time of the 1972 constitutional amendment Labor Code sections 3502, 4702, and 4703, clearly demonstrate the distinctions between partial and total dependents and that while partial dependents may not receive more than total dependents, they may certainly receive less. The voters pamphlet, however, discusses the amendment in terms of the state receiving the death benefit where the employee dies "*without* dependents" (Amendment Summary), "*no* dependents" (both General Analysis by Legislative Counsel and argument in favor of Prop. 13), has "*no* surviving dependents" (Detailed Analysis by the Legislative Counsel), "leaves *no* dependent heirs" (Cost Analysis by the Legislative Analyst), and "*no* legal heirs can be found" (argument in favor of Prop. 13).

Certainly where an employee dies leaving only a *partial* dependent, he is not dying without "dependents," "heirs," or someone "surviving." More impor-

tantly, it must be remembered that this constitutional amendment was required to authorize the escheat of death benefits to the state. When the amendment was presented to the voters, the only situation to which it applied that was called to their attention was where the deceased employee left *"no"* surviving dependents. There was no discussion of total versus partial dependency. Accordingly, we conclude that the voters pamphlet does not support an interpretation of the 1972 amendment under which escheat to the state of death benefits is authorized where there are partial dependents surviving.[3]

Furthermore, sound public policy does not support an interpretation of the 1972 amendment consistent with *Tessler*. Speaking with respect to Labor Code section 4706.5, the *Tessler* court argued that rejection of its view "would encourage an employer or its insurance carrier to settle doubtful death benefit claims for small amounts and then, arguing reasonable doubt as to liability, obtain [approval of the settlement by the WCAB], thus to avoid the full liability of the statute." (*Tessler, supra,* 94 Cal.App.3d 72, 79.) In rebuttal, however, we can equally hypothecate that the 1972 amendment if interpreted consistently with *Tessler* would discourage the employer, as a mere stakeholder, from searching for the deceased employee's dependents. Since he then will pay death benefits to the state even where there are only partial dependents, he has no incentive to find, and settle with, the partial dependents. On the other hand, not paying the balance of the death benefit to the state in case of partial dependents not only places the employer where he has an incentive to find the dependents (in the hope that they will turn out to be partial rather than total dependents) and settle with them, but also avoids the consequence of the state, in its zeal to fund the Subsequent Injuries Fund, entering into a direct conflict with the dependents over the amount of the death benefit to which they are entitled.[4]

---

[3]Other states' legislation on this point is clearer. Some statutes specify payment to the state where there are no total *or* partial dependents (see 2 Larson, Workmen's Compensation Law (1981) § 59.31 (b), fn. 51) or specify payment to the state of the *difference* between the death benefits paid to the dependents and the set amount (see *Murray* v. *Farmingdale Federal Savings & Loan Ass'n.* (1960) 11 App.Div.2d 452 [207 N.Y.S.2d 805, 806]). Where the statute is ambiguous, the courts in other states have looked at the background of the statute. (*South Carolina Second Injury Fund* v. *Rabb* (1975) 265 S.C. 36 [216 S.E.2d 761].)

[4]At oral argument Department argued that the *Tessler* rule is preferable since it prevents collusive and fraudulent settlements between the employer (or his carrier) and the alleged partial dependents which would deprive Department of its rightful claim to the entire death benefit where the alleged partial dependents are, in reality, not entitled to any death benefit at all. We do not see, however, how Department's claim for the entire death benefit would be prejudiced by a fraudulent settlement between the employer and the purported partial dependents, especially where Department did not concur in the settlement. (See 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev.ed. 1981) § 8.05.) If the settlement is fraudulent, Department may petition the WCAB to have the WCAB's approval of the settlement set aside. (See *Johnson* v. *Workmen's Comp. App. Bd.* (1972) 2 Cal.3d 964, 975 [88 Cal.Rptr. 202, 471 P.2d 1002]; *Fidelity & Cas. Co. of New York* v. *Workers' Comp. Appeals Bd.* (1980) 103 Cal.App.3d 1001, 1013 [163 Cal.Rptr. 339]; *Silva* v. *Industrial Acc. Com.* (1924) 68 Cal.App. 510, 515 [229 P. 870].)

Also significant is the language of Labor Code section 4706.5 as enacted by the Legislature upon voter approval of the 1972 amendment. (See *Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d at pp. 245-247.) As originally enacted by Statutes 1972, chapter 1334, section 3, page 2666, the Legislature provided in Labor Code section 4706.5, subdivision (a), for payment to the State a sum "equal to the *total* dependency benefit that would be payable pursuant to Section 4702 to a surviving spouse with no dependent minor children" where the employee "does not leave surviving him *any* person entitled to a dependency death benefit." (Italics supplied.) It is obvious from its use of this language that the Legislature was aware of this distinction between "total" and "partial" dependency death benefits.

The subdivision refers to Labor Code section 4702 which specifies the amount of "total" and "partial" dependency death benefits. Further, the Legislature talks in terms of the amount payable to the state by the employer as the "*total* dependency death benefit" where "*any* person" does not receive "*a* dependency death benefit." If the Legislature intended the result of *Tessler* it would have specifically directed that the balance be payable in the case of partial death benefits.

Further support for this view is provided by subdivision (d) of the original Labor Code section 4706.5 as enacted by the Legislature in 1972. The original subdivision (d) stated: "Where the actual burial expense is less than the amount specified in Section 4701, the employer shall pay the difference to the State Treasurer." While the Legislature subsequently deleted this provision by amendment (Stats. 1973, ch. 21, § 1, p. 37),[5] this original subdivision (d) demonstrated that the Legislature knew full well how to phrase a statute to allow payment to the state where the full amount of the available death benefit is not paid to the partial dependents. Thus, if the Legislature understood that the 1972 constitutional amendment permitted the result in *Tessler,* surely it would have explicitly so provided.

Also significant is that prior to *Tessler* the WCAB never interpreted Labor Code section 4706.5 as the court did in *Tessler.* (*Amador Valley Joint Union High Sch. Dist.* v. *State Bd. of Equalization, supra,* 22 Cal.3d p. 245; *Judson Steel Corp.* v. *Workers' Comp. Appeals Bd., supra,* 22 Cal.3d 658, 668; see also *State of South Dakota* v. *Brown* (1978) 20 Cal.3d 765, 777 [144 Cal.Rptr. 758, 576 P.2d 473]; *Reynolds* v. *State Board of Equalization* (1946) 29 Cal.2d 137, 140 [173 P.2d 551, 174 P.2d 4].)

The Supreme Court has interpreted Labor Code section 4706.5 in the same manner as this court. In *Atlantic Richfield Co.* v. *Workers' Comp. Appeals Bd.,*

---

[5]The 1973 amendments to Labor Code section 4706.5 were enacted as urgency legislation for reasons unconnected with the issue presented herein.

*supra,* 31 Cal.3d 715, 726-727, the Supreme Court determined that nothing in Labor Code section 4706.5, subdivision (a) requires payment to the Department of Industrial Relations where there is a surviving partial dependent, stating that, "[W]e note that on its face, section 4706.5, subdivision (a), does not provide for payment of any balance to the DIR if partial death benefits are paid. The statute requires the specified payment when, following the death of an employee entitled to compensation benefits 'such employee does not leave surviving *any* person entitled to a dependence death benefit . . .' Thus, by its very terms, the statute contemplates payment to the DIR when persons leave *no* dependents, not when persons leave dependents who are entitled to less than a total death benefit. The DIR is to receive payment only if no dependents survive. Since deceased left a widow, albeit only a *partial* dependent, the statute does not apply.

"Moreover, the statute further specifies that in such cases 'the employer shall pay a sum to the Department of Industrial Relations equal to *the total dependency death benefit* that would be payable to a surviving spouse with no dependent minor children.' (Italics added.) Such a benefit would be in the amount of $50,000. (§ 4702, subd.(c).) The statute is absolutely silent as to the payment of any 'balance' or 'difference.'

"In summary, therefore, section 4706.5, subdivision (a), does not apply to the case before us because a 'person entitled to a dependency death benefit' does survive. Also, the amount of the death benefit payable under section 4706.5 is not tailored by the statute to a *partial* surviving dependent. Rather, to so apply the statute would require the employer to pay the partial dependent a partial dependency benefit and, in addition, to pay the DIR the maximum death benefit. This, in our view, would be manifestly unfair to employers, inconsistent with the statute, and assuredly would discourage the settlement of partial dependency claims."

Accordingly, we cannot accept the holding in *Tessler* that in the case of partial dependents the balance of the death benefit not paid to the partial dependents is to be paid to the state (by way of payment to Department). Rather, both under the 1972 constitutional amendment and Labor Code section 4706.5 the state may only receive death benefits where the deceased employee leaves no surviving *partial or total* dependents.

In light of our holding on escheat to the state of death benefits, Travelers does have standing to object to the death benefit distribution agreement between Department and the partial dependents to which Travelers was not a party. Thus, herein, the partial dependents may receive death benefits pursuant to Labor Code section 4702 based only upon the amount the decedent devoted to their support.

## III

The order awarding the death benefit to Department and the partial dependents is annulled. The matter is remanded to the WCAB for redetermination of the amount of the death benefit to which the partial dependents are entitled.

Potter, J., and Lui, J., concurred.